FILED
2012 Sep-27  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GERALD ROBINSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-02692-AKK** |
| **U.A.B.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Gerald Robinson began working as a general mechanic in Hospital Maintenance at the University of Alabama at Birmingham in 2004.[1]  Doc. 12-1 at 5.  This litigation stems from the alleged sexual harassment Robinson claims he endured at the hands of some of his former female co-workers in 2007 and 2008, and a series of alleged retaliatory disciplinary actions taken against Robinson, which culminated in his termination in March 2010.[2]  The Board of Trustees of the University of Alabama has moved for summary judgment on all of Robinson's

---

[1]Robinson originally filed this action against the University of Alabama at Birmingham ("UAB").  Doc. 1.  However, the properly named defendant, the Board of Trustees of the University of Alabama, was substituted on November 11, 2010.  For clarity, the court will refer to "UAB" as the defendant in this action.

[2] Although Robinson alleges in his Complaint that the harassment occurred from late 2009 to early 2010, doc. 1 at 3-5, he testified in his deposition that the events occurred in 2007 and 2008, doc. 12-1 at 8-9, and asserts in his Opposition to Defendant's Motion for Summary Judgment that all of the harassing events occurred in 2008, doc. 16 at ¶¶ 17, 22, 24.

claims.  Doc. 13.  The motion is fully briefed, docs. 16-18, and is due to be
**GRANTED**.

## I.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary
judgment is proper "if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." FED. R.
CIV. P. 56(a).  To support a summary judgment motion, the parties must cite to
"particular parts of materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations, stipulations,
admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c).
Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate
time for discovery and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to that party's case, and
on which that party will bear the burden of proof at trial." *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of
proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden
then shifts to the nonmoving party, who is required to "go beyond the pleadings"
to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal
quotation marks omitted).  A dispute about a material fact is genuine "if the
evidence is such that a reasonable jury could return a verdict for the nonmoving
party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court

must construe the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the nonmoving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL AND PROCEDURAL HISTORY

Robinson alleges that in September or October 2008, a patient care technician named Anita Bailey ("Bailey") told him she "wanted to date [him], was open for sex[,] and wanted to start conversations."[3]  Doc. 12-1 at 6-7.  When Robinson rejected Bailey's advances, she became adversarial and directed profanity at him in front of a charge nurse. *Id.*  Robinson claims that later in 2008,

---

[3]In its Brief in Support of Motion for Summary Judgment, doc. 13, UAB identifies a secretary named Tiffanie as the person who made these advances on Robinson. *Id.* at 3 ¶ 15. Although, Robinson admitted this paragraph in his response, doc. 16 at 2 ¶ 15, he consistently identifies Bailey as the source of unwelcome advances he characterizes as sexual harassment. *See id.* at 5-6.  Moreover, Robinson later identifies Tiffanie Shepherd as a secretary who made a separate harassing comment toward him. Doc. 12-1 at 8.  As such, the court assumes that Robinson admitting paragraph 15 was an error and Bailey is the person who made the advances toward Robinson.

Bailey and two other co-workers, Kim Fields[4] and Tiffanie Shepherd,[5] asked another co-worker, Rose Brooks, to report Robinson to Human Resources for sexual harassment. *Id.* at 7-8. Brooks apparently declined. *Id.* at 8. In a separate incident, Shepherd also allegedly made statements about Robinson in front of a technician, Johnny Armstrong, stating that Robinson did not do his job and was "a whore." *Id*. Additionally, Robinson alleges that LaShelle Ward made a harassment complaint against him as a favor to his ex-girlfriend, Seconda Littleton.[6] *Id.* at 9. Finally, Robinson alleges that three female employees reported him for harassing another female employee through an anonymous hotline. *Id.* at 10. However, the alleged victim denied that Robinson harassed her. *Id*. Moreover, the female co-workers that Robinson alleges harassed him deny Robinson's allegations. *Id.* at 57-58, 60-61, 63-64.

Sometime in 2008, Robinson reported Bailey and Shepherd to his direct supervisors and eventually to Al Moradi ("Moradi") instead of to Human Resources.[7] Doc. 12-1 at 6-7. Under UAB's harassment policy, however, Human

---

[4] Kim Fields is identified in her affidavit as Kimberly Ayers. *See* doc. 12-1 at 60.

[5] Robinson originally claimed he could not remember Tiffanie's last name, he just recognized her as "a young secretary on the 7th floor." Doc. 12-1 at 8. However, she was later identified as Tiffanie Shepherd. *See* Doc. 13 at 4 n.1.

[6] Robinson appears to allege that Bailey, Fields and Shepherd conspired to have other female co-workers file complaints against him. *See* doc. 12-1 at 6. It is unclear to the court, however, whether Robinson is alleging that these three women also played a role in LaShelle Ward's complaint.

[7] It is also unclear to the court whether Robinson complained about the alleged conspiracy, between Bailey, Shepherd and Fields, to make other women file complaints on him.

Resources is the entity solely responsible for investigating harassment complaints. *Id.* at 48-49. Robinson alleges that, despite his complaints, no action was taken on his behalf and he, instead, was sent to diversity training because "[he] was the problem." *Id*. at 7-8. While both Robinson and UAB agree that female employees filed harassment complaints against Robinson, the Parties dispute whether Robinson or those co-workers complained first. *Id.* at 7, 8, 10, 66, 67. The Parties, likewise, dispute whether Robinson's supervisors ever advised him to take his complaints to Human Resources. *Id.* at 10, 67.

Robinson received a series of disciplinary actions beginning in November 2004 that culminated in his discharge on March 25, 2010. *Id.* at 16, 27-39. Under UAB's progressive discipline policy, an employee is subject to discharge if he receives four written warnings in an eighteen-month period. *Id.* at 39. The incident that triggered this action occurred on March 15, 2010, when Robinson received his fourth written warning in an eighteen-month period after Fred Price, one of his supervisors, saw Robinson away from his work area without permission and leaving the UAB parking bus twenty-five minutes after Robinson had clocked in. *Id.* at 21, 39. This resulted in Moradi discharging Robinson. *Id*. Although Robinson challenged his discharge under UAB's problem resolution procedure, the committee assigned to review the complaint upheld the discharge after reviewing the evidence and hearing testimony. *Id.* at 42-46. Thereafter, Robinson filed this lawsuit on October 4, 2010, alleging Title VII claims for sexual harassment, count I, and retaliation, count II. Doc. 1 at 5-7.

# III.   ANALYSIS

## A.   Sexual Harassment Claim

To prove a hostile work environment, Robinson must show "(1) that [he] belongs to a protected group; (2) that [he] has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment was based on [his] sex . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000) (internal quotation marks omitted).  However, "Title VII 'does not prohibit all verbal or physical harassment in the workplace'" and instead "prohibits only the type of severe or pervasive sexual harassment that 'alter[s] the conditions of the victim's employment.'" *Id*. at 508 (alteration in original) (quoting *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80-81 (1998)).  Thus, Robinson must do more than just state that a co-worker harassed him and that his supervisors failed to investigate.  Rather, Robinson must show that the alleged conduct was "sufficiently severe or pervasive to alter the terms and conditions of [his] employment." *Id.*  "Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII

does not become a more 'general civility code.'" *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (citation omitted), *abrogated on other grounds by Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012). Moreover, "[t]his requirement is regarded 'as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace – such as male-on-male horseplay or intersexual flirtation – for discriminatory conditions of employment.'" *Id*.

To ensure that a plaintiff is not simply challenging ordinary workplace activity, the court must evaluate the allegations both objectively and subjectively. *Mendoza*, 195 F.3d at 1246. Put differently, a plaintiff must not only establish that he subjectively perceived the harassment as severe and pervasive, but that this perception was objectively reasonable. *Id*.

Based on the case law, even assuming that Robinson subjectively perceived the alleged harassment as severe and pervasive, Robinson's claim fails because the alleged conduct does not satisfy the objective standard. According to Robinson, one co-worker made it clear that she "wanted to date [him], was open for sex[,] and wanted to start conversations," another said that Robinson "whore[s] around[,]" and three other co-workers also unsuccessfully attempted to report him for sexual harassment. Doc. 12-1 at 7-8, 10. Under any standard, objective or subjective, the alleged conduct simply does not rise to the level necessary for a

hostile environment.[8]  For example, stating that someone "whore[s] around" or fabricating sexual harassment complaints about them are not incidents based on a person's sex.  *See Johnson*, 234 F.3d at 508.  "[T]he statements and conduct must be of a sexual or gender-related nature – 'sexual advances, requests for sexual favors, [or] conduct of a sexual nature' – before they are considered in determining whether the severe or pervasive requirement is met."  *Gupta*, 212 F.3d at 583 (citation omitted).  Moreover, even Bailey's comment that she wanted to have sex with Robinson is neither physically threatening nor humiliating, and there is no allegation that the conduct unreasonably interfered with Robinson's job performance.  *See Mendoza*, 195 F.3d at 1246.  In fact, the conduct alleged here is the quintessential "horseplay or intersexual flirtation" that the case law instructs courts against mistaking for a Title VII claim.  *See Oncale*, 523 U.S. at 81.  As the Eleventh Circuit stated in *Gupta* when discussing a claim based, in part, on a "you are looking very beautiful" comment,

> [a] man can compliment a woman's looks (or a woman compliment a man's looks) on one or several occasions by telling her that she is looking 'very beautiful,' or words to that effect, without fear of being found guilty of sexual harassment for having done so. Words complimenting appearance may merely state the obvious, or they may be hopelessly hyperbolic.  Not uncommonly such words show a

---

[8] In ascertaining whether the alleged harassment was sufficiently severe and pervasive, this court must evaluate:  "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997)).

flirtatious purpose, but flirtation is not sexual harassment.

*Gupta*, 212 F.3d at 584. That Bailey apparently took the more direct approach and allegedly told Robinson that she "wanted to date, was open for sex and wanted to start conversations," doc. 12-1 at 7-8, does not change the analysis. Her conduct was still of the lawful flirtatious nature. While direct and perhaps inappropriate, Bailey's conduct is far less severe than the instances of sexual comments and physical contact courts have rejected. *See Mendoza,* 195 F.3d at 1247 (where a supervisor's conduct, that included constantly following and staring at the plaintiff, directing a perceived sexual statement at her, and touching her once, fell well short of establishing the severe and pervasive conduct necessary to support a hostile work environment claim); *see also Lockett v. Choice Hotels Int'l, Inc.,* 315 F. Appx. 862, 863-64, 866 (11th Cir. 2009) (finding co-worker's comment that he wanted to perform oral sex on the plaintiff, that "her boyfriend 'ain't F'ing [her] right,'" and calling her a "ho" and a "bitch" insufficient for a hostile environment claim). In short, the alleged conduct here is simply not the type of conduct courts have found to constitute sexual harassment.

Alternatively, even if the alleged conduct satisfies the objective standard, Robinson's claim still fails because he cannot establish the frequency level necessary for a severe and pervasive claim. Robinson alleges that the harassment began in 2007 when Littleton and Ward conspired to report him for sexual harassment after his relationship with Littleton ended and that the other four

incidents occurred in Fall 2008. Doc. 12-1, at 7-9.  Five incidents over the course

of one or two years "[are] far too infrequent to alter the conditions under which

[Robinson] was required to perform [his] job" and do not satisfy the severe and

pervasiveness requirement.  *Mendoza*, 195 F.3d at 1249.  Moreover,  even if the

court focuses only on the four incidents that occurred in the Fall of 2008, four

incidents over a three month period are likewise too infrequent.  *See Lockett*, 315

F. Appx. at 866.

In short, the court finds that Robinson has failed to establish a hostile work

environment caused by severe and pervasive sexual harassment.  Therefore,

UAB's motion for summary judgment is **GRANTED** as to this claim.[9]

## B.    Retaliation

Robinson also asserts a retaliation claim against UAB, alleging that UAB

took a series of disciplinary actions against him in response to his complaints

against Bailey.[10]  Doc. 16, at 5-6.  Allegedly, in 2008 Bailey, Shepherd and Fields

asked another coworker to report Robinson to Human Resources.  Doc. 12-1 at 7-

8.  Robinson contends that when he reported Bailey to his supervisors, they did

nothing to remedy the problem and instead punished him.  *Id.* at 5.  He argues that

_____

[9] The court notes that UAB presents the *Faragher* defense; however, because Robinson
has failed to satisfy the summary judgment standard on his hostile work environment claim, this
defense is not essential, and the court does not address its merits.

[10] Although Robinson also filed a complaint for sexual harassment against Shepherd,
Robinson does not appear to assert that UAB also retaliated against him in response to that
complaint.

"[i]t is telling that the majority of [his] alleged instances of misconduct occurred subsequent to his making a complaint against Anita Bailey." *Id.* at 5-6.

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate "(1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Id*. A plaintiff can meet the causation requirement if he provides sufficient evidence that his employer knew of the protected expression and "that there was a close temporal proximity between this awareness and the adverse . . . action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). The temporal proximity between the two events "must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that twenty-month lapse with no other evidence suggests no causality at all and citing with approval *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding three-month lapse insufficient for retaliation claim) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (holding four-month lapse insufficient)); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding three-month lapse insufficient). If there is a substantial delay between the protected expression and the adverse employment action, with no other evidence showing causation, a retaliation claim fails as a matter of law. *Higdon*, 393 F.3d at 1220.

Taking all reasonable inferences in Robinson's favor, the court finds that Robinson failed to establish a prima facie claim of retaliation. Robinson appears

to argue that UAB manufactured the four written disciplinary notices to mask its decision to discharge him for his complaints about Bailey. *See* doc. 16, at 5-6. The court first notes that Robinson initially asserted that all of the events giving rise to this litigation occurred in late 2009 and early 2010. Doc. 1 ¶¶ 8, 10. Based on these dates, only two of the relevant disciplinary warnings occurred after Robinson complained. However, the court will use 2008 as the starting date because the parties conceded in their respective summary judgment briefs that the incident involving Bailey occurred in 2008. In that regard, assuming that Robinson reported Bailey to Moradi in December 2008, the temporal proximity between Robinson's complaint and the first and second disciplinary warnings is one and two months, respectively. Doc. 12-1, at 7, 33-35. Despite the close proximity, Robinson's retaliation claim is flawed nonetheless in two respects. First, Robinson provided no evidence to indicate that Ralph Graham or Danny Wilson, the supervisors who issued the first two sanctions, knew of his complaints against Bailey. *Id.* "In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997)(citation omitted). Robinson failed to make that

showing here.  Second,  the third and fourth write-ups that led to Robinson's

termination occurred in February and March 2010 respectively, twelve months

after his initial complaint and a year after the first two write-ups.  *Id.* at 37, 39.

The time lapse is simply too great to satisfy the causation element.  *See Clark*

*Cnty. Sch. Dist.*, 532 U.S. at 273-74.  Moreover, Moradi, who made the decision to

discharge Robinson, did not issue the first two disciplinary warnings, doc. 12-1 at

33-35, 38, and there is no evidence that Moradi had any involvement in the first

two write-ups.  Thus, Robinson has not satisfied the causation necessary to

establish a prima facie retaliation claim.

Alternatively, even if the court finds that Robinson established causation,

the burden simply shifts to UAB to demonstrate legitimate reasons for the adverse

employment action. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th

Cir. 1997). If UAB proffers legitimate reasons for the action, the burden then

shifts back to Robinson to show that the reasons are merely a pretext to mask

retaliatory animus.  *Id*.  However, Robinson may not substitute his own business

judgment for that of his employer.  *Alvarez v. Royal Atl. Developers, Inc.*, 610

F.3d 1253, 1265 (11th Cir. 2010) (citing *Chapman v. AI Transp.*, 229 F.3d 1012,

1030 (11th Cir. 2000)). In fact, "Title VII does not take away an employer's right

to interpret its rules as it chooses, and to make determinations as it sees fit under

those rules." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). Significantly, if "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d at 1265-66.

Robinson's claim fails because UAB met its burden of articulating a legitimate, non-retaliatory reason for the discharge, i.e., Robinson received four written sanctions in an eighteen-month period, and Robinson failed to present any evidence of pretext.  For example, there is no evidence before this court about a similarly situated employee who committed an equal number of infractions and yet retained her employment. To the extent that Robinson maintains his infractions did not warrant discharge, employees may not substitute their own business judgment for that of their employers.  *Alvarez*, 610 F.3d at 1265.  Moreover, it is not this court's role to second guess employers.  Rather, the court is limited to reviewing whether discriminatory or retaliatory animus motivated the challenged decision. Where, as here, UAB's reason is "one that might motivate a reasonable employer," *Alvarez*, 610 F.3d at 1265, Robinson's claim fails as a matter of law.  In short, Robinson  "cannot succeed by simply quarreling with the wisdom of that reason," as he has done.  *Id*.  Therefore, UAB's motion on the retaliation claim is also

14

**GRANTED**.

## IV.   CONCLUSION

Taking all inferences in the light most favorable to the nonmoving party, Robinson fails to satisfy his burden of producing enough evidence such that a reasonable jury could return a verdict in his favor on any of his claims.  *See Anderson*, 477 U.S. at 248, 255.  Accordingly, Robinson's claims are **DISMISSED** with prejudice.

**DONE** the 27th day of September, 2012.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

15